UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
JUAN P. ZELAYA,

                     Petitioner,

            -against-

STATE OF NEW YORK,

                    Respondent.
-------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
19-CV-07140 (RPK) (JMW)

**WICKS,** Magistrate Judge:

        Before the Court on referral for a report and recommendation from the Honorable Judge Rachel P.

Kovner is the application of *pro se* Petitioner Juan P. Zelaya for a writ of habeas corpus pursuant to 28

U.S.C. § 2254 challenging his 2013 conviction entered in the New York State Supreme Court, Suffolk

County.  Following a jury trial, Petitioner was convicted of predatory sexual assault against a child, rape in

the first degree, course of sexual conduct against a child in the first degree, two counts of sexual abuse in

the first degree, and two counts of endangering the welfare of a child.  Petitioner is currently incarcerated

at Clinton Correctional Facility in Dannemora, New York.  In his application, Petitioner alleges eight

separate grounds for relief, namely that: (1) the trial court erred in its evidentiary rulings regarding the

testimony of an 8-year-old witness; (2) Petitioner was denied a fair trial before an impartial jury based on

comments made at jury selection and testimony at trial regarding his incarceration; (3) Petitioner was denied

a fair trial before an impartial jury because a juror was "dozing" during the jury charge; (4) the evidence

presented at trial was not legally sufficient; (5) the jury verdict was against the weight of the evidence; (6)

Petitioner's sentence was unconstitutional; (7) Petitioner received ineffective assistance of trial counsel;

and (8) the trial court erred in permitting the introduction at trial of certain statements made by Petitioner

to the police.  Respondent State of New York opposes the application in its entirety.  For the reasons that

follow, the undersigned respectfully recommends that Petitioner's application for a writ of habeas corpus

be denied.

# FACTUAL BACKGROUND[1]

*Petitioner's Sexual Abuse*

Ana Hernandez came to the United States from El Salvador illegally in 2003, joining her husband who had come before her. (DE 8-2 at 539–40, 555.) Hernandez's two daughters, F.M. and N.M., illegally traveled to the United States in 2009 while her son, J.M., remained in El Salvador. (*Id.* at 540–41.) Once in the United States, Hernandez and her husband had a third daughter, M.M. (*Id.* at 541.) Hernandez and her husband separated soon after M.M.'s birth, and her husband subsequently passed away. (*Id.*)

Following the death of her husband, Hernandez met Oscar Zelaya and the couple had a son together. (*Id.* at 542.) In April 2011, Hernandez, her four children, Oscar Zelaya, and Oscar Zelaya's brother—Petitioner—moved into a three-bedroom basement apartment on Heckscher Avenue in Bay Shore, New York. (*Id.* at 541–42.) F.M., N.M., and M.M. shared a bedroom, while Hernandez shared a bedroom with Oscar Zelaya and their newborn son. (*Id.* at 543.) Petitioner had his own bedroom, which had a television in it. (*Id.* at 543, 547.)

Hernandez worked daily in Bay Shore, beginning each day at 6:00 a.m., while Oscar Zelaya worked in construction. (*Id.* at 543–44.) Because Petitioner was unemployed, he often was home alone with Hernandez's girls, F.M., N.M., and M.M. (*Id.* at 544, 562.) Even when Hernandez was home, Petitioner would periodically—sometimes twice a week—take the girls into his bedroom and close the door to "pray over the children." (*Id.* at 544, 563.) Now and again, F.M.'s friend from school, J.R., would visit the home and join the girls in Petitioner's bedroom to pray. (*Id.* at 545–46.) Both Hernandez and J.R.'s mother, Ingrid Chilel, trusted Petitioner and believed that he was a good, religious man. (*Id.* at 563.) This, as they later discovered, could not have been further from the truth.

Petitioner repeatedly raped F.M.—who, at the time, was about ten years old—for the year that she lived at the Heckscher Avenue address. (*Id.* at 666.) Petitioner would kiss F.M., have sexual intercourse with her, and sometimes spit saliva into her mouth, demanding that she swallow it. (*Id.* at 667–68.) This

---

[1] The facts are taken from the record of the proceedings leading up to, and including, Petitioner's state court trial and subsequent appeals.

2

would occur, at times, at night in F.M.'s room, with her sister M.M. in bed next to them, which both M.M. and N.M. witnessed. (*Id.* at 590, 626, 667.) On other occasions, Petitioner would take F.M. into his room—again, pretextually to pray—to rape her. (*Id.* at 668.) Moreover, Petitioner would often bring N.M., M.M., and J.R. into the room, put pornography on the television, and have the girls watch as he raped F.M. (*Id.* at 592–94, 668–70.) Petitioner forced the girls to watch F.M. cry as he raped her. (*Id.* at 591.) When F.M. asked him to stop, Petitioner responded by spitting in her mouth. (*Id.*) F.M., out of fear that something would happen to her, did not share this with anyone for most of the year. (*Id.* at 670–71.) N.M. did not notify anyone about the rape because Petitioner threatened that, if she disclosed to her mother what he was doing to F.M., he would lie and tell her mother that she was having sex with her stepfather. (*Id.* at 595.) Similarly, Petitioner told M.M. that, if she told anyone about the rape, she would go to the devil (*id.* at 630), and told J.R. that, should she disclose his actions to anyone, something would happen to her family and they would go to hell, (*id.* at 698).

***Sexual Abuse Disclosure***

Hernandez became concerned about Petitioner in mid-April 2012 when she saw Petitioner, on numerous occasions, attempting to enter the girl's room in the middle of the night. (*Id.* at 547–48.) Her suspicions grew when a woman, who lived in another part of the Heckscher Avenue home, warned Hernandez that she had observed Petitioner "very close" to the girls. (*Id.* at 556.) With these inklings in mind, Hernandez confronted Petitioner. (*Id.* at 549.) Petitioner explained that the reason he tried getting into the girl's room at night was because "he had seen a bad spirit and that he wanted to pray for the girls." (*Id.*) Hernandez then asked the girls whether Petitioner had been coming into their room at night, which prompted F.M., M.M, and N.M. to explain to Hernandez what Petitioner had been doing for about a year. (*Id.* at 599, 664, 679.) Hernandez immediately called the police and awaited their arrival at her home. (*Id.* at 549.)

Officer Holly McDonald initially responded to Hernandez's call. (*Id.* at 525–26.) At the home, Officer McDonald encountered Hernandez, three young girls, and a male. (*Id.* at 527.) Officer McDonald quickly realized that Hernandez spoke only Spanish and requested the assistance of a Spanish speaking

officer.  (*Id.*)  Officer Jacob Alerte, who is fluent in both Spanish and English, arrived at the home shortly after.  (*Id.* at 572, 755.)  After interviewing Hernandez, Officer Alerte spoke with the male occupant, Petitioner.  (*Id.* at 756.)  Officer Alerte asked Petitioner if he knew why the police were at his home, to which Petitioner replied that they were there because F.M. told her mother that Petitioner had recently had sex with her.  (*Id.*)  He added that he was in love with F.M., and that they had made love only once.  (*Id.*)

After their conversation, Officer Alerte placed Petitioner in custody and transported him to the police precinct.  (*Id.* at 757.)  There, Officer Alerte turned the case over to Detective George Michels, but stayed to assist with translation.  (DE 8-3 at 39–40.)  Officer Alerte had no trouble communicating with Petitioner—Petitioner understood the questions, gave appropriate responses, and did not indicate that he had any trouble following the Spanish translation.  (*Id.* at 42.)  With Officer Alerte translating, Detective Michels informed Petitioner that he was investigating an allegation that Petitioner was having a sexual relationship with F.M.  (*Id.* at 12.)  Detective Michels then advised Petitioner of his *Miranda* rights, reading from a police department rules of interrogation card.  (*Id.*)  Petitioner waived his *Miranda* rights, and both he and Detective Michels signed the interrogation card used to inform Petitioner of his rights.  (*Id.* at 12–17.)

Petitioner proceeded to explain that he lived with his brother, who was dating F.M.'s mother, and that he had become close with F.M. over the prior three months.  (*Id.* at 18.)  Petitioner then admitted that he had sexual intercourse with F.M. and that she asked him to run away with her.  (*Id.*)  Petitioner stated that the last time he and F.M. had sexual intercourse was about a week earlier after she had gone to his room and asked him to go to her bedroom.  (*Id.* at 18–19.)  According to Petitioner, once in F.M.'s room, the two kissed, F.M. pulled her pants down, he got on top of her, and they had sex.  (*Id.* at 19.)  Petitioner added that, during the intercourse, his condom broke, so he withdrew and ejaculated on her thigh.  (*Id.*)

Following the colloquy with Petitioner, Detective Michels again advised Petitioner of his *Miranda* rights.  (*Id.* at 19–20.)  Petitioner again waived his rights and, with the help of Detective Michels and Officer Alerte, reduced his statement to writing.  (*Id.* at 43–45.)  Petitioner confirmed that the statement was accurate, swore to the truth of its contents, and signed the statement.  (*Id.* at 44–45.)

4

## PROCEDURAL HISTORY

### The Indictment

Following his arrest, Petitioner was indicted for: (1) predatory sexual assault against a child (N.Y.P.L. § 130.96); (2) two counts of rape in the first degree (N.Y.P.L. § 130.35(1),(4)); (3) course of sexual conduct against a child in the first degree (N.Y.P.L. § 130.75(b)); (4) two counts of sexual abuse in the first degree (N.Y.P.L. § 130.65(1),(4)); and (6) six counts of endangering the welfare of a child (N.Y.P.L. § 260.10(1)). (DE 8-1 at 80–85.)

### The Suppression Hearing

On February 21, 2013, the state court judge conducted a suppression hearing regarding Petitioner's motion to suppress his oral and written statements. (*See, e.g.*, DE 8-3.) The prosecution called two witnesses at the hearing, Detective Michels and Officer Alerte. (*Id.* at 7, 34.) Defense counsel did not call any witnesses. Following the hearing, the state court found that Petitioner's "initial pre-*Miranda* statement to the officer was not the product of a custodial arrest," and that Petitioner "was advised of his *Miranda* rights and that he knowingly, voluntarily, and intelligently waived them at the precinct prior to giving his subsequent statements." *People v. Zelaya*, 170 A.D.3d 1206, 1206–07 (N.Y. App. Div. 2019) (discussing the trial court's decision denying Petitioner's motion to suppress his oral and written statements); *see also* DE 7 at 6–7. The statements, therefore, were found to be admissible for trial.

### His Trial and Sentencing

At trial, the prosecution presented several witnesses, including Hernandez (DE 8-2 at 538), N.M. (*id.* at 580), M.M. (*id.* at 622), Chilel (*id.* at 638), F.M. (*id.* at 659), J.R. (*id.* at 692), Detective Michels (*id.* at 713), Officer Alerte (*id.* at 752), and several doctors (*id.* at 776–841). Notably, because M.M. was, at the time, 8 years old, the court conducted a hearing to determine whether she was competent to testify under oath. (*Id.* at 608–09.) The court asked M.M. numerous questions[2] and concluded that M.M. demonstrated

---

[2] In response to the court's inquiry, M.M. established that she knew: her name; that she was in court, and was there to talk about what Petitioner had done to her sister; that the judge was in charge of the courtroom; that she was 8 years old and in second grade; the color of her house and the name of her street; her sibling's ages; how to read and write English; the difference between a truth and a lie; and that you must always tell the truth in court. (DE 8-2 at 609–17.)

her ability to provide sworn testimony to the jury.  (*Id.* at 609–19.)  Defense counsel objected to the court's finding of M.M.'s competency to testify, which the court overruled.  (*Id.* at 619–20.)

Following the defense's case—which consisted solely of Petitioner's testimony denying the allegations and insisting that he did not give a knowing, voluntary waiver of his *Miranda* rights—the jury found Petitioner guilty of predatory sexual assault against a child, rape in the first degree, court of sexual conduct against a child in the first degree, two counts of sexual abuse in the first degree, and two counts of endangering the welfare of a child.  (*Id.* at 1063–68.)  On June 18, 2013, the court sentenced Petitioner to: an indeterminate term of imprisonment of 25 years to life for predatory sexual assault against a child; a determinate period of imprisonment of 25 years with 20 years post-release supervision for rape in the first degree; a determinate sentence of 7 years with 10 years post-release supervision for the first count sexual abuse in the first degree; a determinate sentence of 7 years with 10 years post-release supervision for the second count of sexual abuse in the first degree; a definite sentence of 1 year for the first count of endangering the welfare of a child; and a definite sentence of 1 year for the second count of endangering the welfare of a child.  (*Id.* at 1084–85.)  Both the periods of incarceration and the periods of post-release supervision were set to run concurrently.  (*Id.* at 1085.)  The court also issued a 100-year permanent order of protection on behalf of F.M., N.M., M.M., and J.R.  (*Id.* at 1086.)

### His Appeals

Petitioner filed an appeal of his judgment of conviction to the New York Appellate Division, Second Department at the beginning of May 2018.  (*See, e.g.*, DE 1-1.)  Petitioner raised eight issues—which are largely duplicative of what he raises in his present habeas corpus application—namely that: (1) the trial court erred in denying his motion to suppress his statements to law enforcement officials; (2) the trial court erred in its determination that M.M. was competent to testify; (3) the trial court erred in its failure to discharge a dozing juror as grossly unqualified; (4) Petitioner was deprived of a fair trial based upon the juror learning of Petitioner's incarceration pending trial; (5) Petitioner's guilt was not proven beyond a

---

M.M. additionally promised that she would tell the truth to whomever asked her questions in court, and was able to explain that the court was lying when it said to her that it had five puppies on the bench.  (*Id.* at 617–18.)

reasonable doubt, and the jury verdict was against the weight of the evidence; (6) Petitioner received ineffective assistance of counsel at trial; and (7) Petitioner's sentence was harsh and excessive. (*Id.*)

On March 27, 2019, the Appellate Division affirmed Petitioner's judgment of conviction in its entirety. *Zelaya*, 170 A.D.3d 1206. Specifically, the Appellate Division held that Petitioner's claim regarding the admission of his oral and written statements was meritless, as the trial court correctly determined that Petitioner's pre-*Miranda* statement was not the product of a custodial interrogation and that Petitioner knowingly and voluntarily waived his *Miranda* rights before offering his subsequent statements. *Id.* at 1206–07. Moreover, the court found that law enforcement officials provided Petitioner the appropriate translation of his *Miranda* rights and written statement. *Id.* at 1207. The court also found that Petitioner was not deprived of effective assistance of counsel, and that his sentence was not excessive. *Id.* at 1208. Finally, the court held that Petitioner's remaining claims were unpreserved and, in any event, without merit. *Id.* at 1207–08.

Following the Appellate Division's affirmation of the judgment of conviction, Petitioner sought leave to appeal to the New York Court of Appeals on his appellate claims, omitting his claim that the trial court erred in failing to discharge a dozing juror as grossly unqualified. (*See* DE 7 at 22.) The New York Court of Appeals denied Petitioner leave to appeal on July 23, 2019. *People v. Zelaya*, 33 N.Y.3d 1110 (2019).

***The Present Petition***

Petitioner, proceeding *pro se*, filed the present application for a writ of habeas corpus on December 17, 2019. (DE 1.) As discussed above, Petitioner asserts in his application eight separate grounds for relief, specifically that: (1) the trial court erred in its evidentiary rulings regarding the testimony of the 8-year-old witness; (2) Petitioner was denied a fair trial before an impartial jury based on comments made at jury selection and testimony at trial regarding his incarceration; (3) Petitioner was denied a fair trial before an impartial jury because a juror was "dozing" during the jury charge; (4) the evidence presented at trial was not legally sufficient; (5) the jury verdict was against the weight of the evidence; (6) Petitioner's sentence was unconstitutional; (7) Petitioner received ineffective assistance of trial counsel; and (8) the trial court

7

erred in permitting the introduction at trial of certain statements made by Petitioner to the police.  (*Id.*)  Respondent opposes the application in its entirety.  (DE 7-1.)

This case was initially assigned to District Judge Roslynn R. Mauskopf and Magistrate Judge Lois Bloom, but was subsequently reassigned to District Judge Rachel P. Kovner and the undersigned as Magistrate Judge.  (Electronic Order dated July 13, 2021.)  A Report and Recommendation referral for the present application accompanied that reassignment order.  (*Id.*)

## LEGAL STANDARD FOR HABEAS CORPUS REVIEW

Pursuant to 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a petition for a writ of habeas corpus by a person in custody resulting from a state court judgment may only be brought on the grounds that his custody is "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  To obtain habeas relief, a petitioner must demonstrate that he has: "(1) exhausted his potential state remedies; (2) asserted his claims in state appeals such that they are not procedurally barred from federal habeas review; and (3) satisfied the deferential standard of review set forth in the [AEDPA], if his appeals were decided on the merits."  *Edwards v. Superintendent, Southport C.F.*, 991 F. Supp. 2d 348, 365–66 (E.D.N.Y. 2013) (citation omitted).

Section 2254's exhaustion requirement, which states that a writ "shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the [s]tate," 28 U.S.C. § 2254(b)(1),  "ensures that state prisoners present their constitutional claims to the state courts in the first instance," *Jackson v. Conway*, 763 F.3d 115, 132 (2d Cir. 2014) (citing *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  Exhaustion requires that a petitioner have had "fairly presented to an appropriate state court the same federal constitutional claim that he now urges upon the federal courts."  *Turner v. Artuz*, 262 F.3d 118, 123 (2d Cir. 2001) (internal quotations and citation omitted).  It is well-settled that petitioners need not "cit[e] book and verse on the federal constitution" to fairly present a federal claim.  *Picard v. Connor*, 404 U.S. 270, 278 (1971).  Rather, the inquiry is whether the petitioner's state court claim was likely to have alerted the court as to the claim's federal nature.  *Jackson*, 763 F.3d 115, 133 (2d Cir. 2014) (citing *Carajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011)).

Apart from Section 2254's exhaustion requirement, "'federal courts will not review questions of federal law presented in a habeas petition application when the state court's decision rests upon a state-law ground that is independent of the federal question and adequate to support the judgment.'" *Occhione v. Capra*, 113 F. Supp. 3d 611, 625 (E.D.N.Y. 2015) (quoting *Cone v. Bell*, 556 U.S. 449, 465 (2009)). A state court's actual and explicit reliance upon a procedural defect to dispose of a claim constitutes an "adequate and independent state ground" for the judgment, precluding federal habeas review. *Harris v. Reed*, 489 U.S. 255, 260 (1989). This bar, however, is not absolute—a petitioner may overcome it by "show[ing] cause for the default and prejudice, or [by] demonstrate[ing] that failure to consider the claim will result in a miscarriage of justice (i.e., the petitioner is actually innocent)." *Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). "To show cause, the petitioner must demonstrate that an external factor 'impeded counsel's efforts' to raise the claim in state court," *Cutts v. Miller*, 19-cv-10721 (LJL), 2021 WL 242891, at *5 (S.D.N.Y. Jan. 25, 2021) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986), while "[p]rejudice requires a 'reasonable probability' that the outcome of the trial would have been different but for the alleged constitutional violation." *Id.* (quoting *Strickler v. Greene*, 527 U.S. 263, 289 (1999)). And to show a miscarriage of justice, the petitioner must make the "truly extraordinary" showing that, due to the alleged constitutional violation, petitioner is actually innocent. *Hyman v. Brown*, 927 F.3d 639, 656 (2d Cir. 2019) (noting that a "petitioner's burden in making a gateway showing of actual innocence is deliberately demanding) (internal quotation marks and citation omitted).

In cases where a state court reaches the merits of a claim asserted in a Section 2254 habeas petition, the AEDPA confers a significant degree of deference to the state court's decision. *See* 28 U.S.C. § 2254(d); *Licausi v. Griffin*, 460 F. Supp. 3d 242, 257 (E.D.N.Y. 2020) ("Title 28 U.S.C. § 2254, as amended by the AEDPA, imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt.") (internal quotation marks and citation omitted). As such, the state court's decision must be either 'contrary to, or involved an unreasonable application of, clearly established [f]ederal law' or 'based on an unreasonable determination of the facts in light of the

evidence presented in the [s]tate court proceeding'" to warrant federal intercession. *Wright v. U. PO*, 10-cv-5127 (MKB), 2021 WL 2779451, at * (E.D.N.Y. July 2, 2021) (quoting 28 U.S.C. § 2254(d)(1)–(2)).

"Clearly established federal law" refers to Supreme Court holdings—*as opposed to dicta*—in effect at the time of the relevant state court decision. *Johnson v. New York*, 851 F. Supp. 2d 713, 721 (S.D.N.Y. 2012) (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). "A decision is 'contrary to' clearly established federal law 'if the state court arrives at a conclusion opposite that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Licausi*, 460 F. Supp. 3d at 257 (brackets and citation omitted). "An 'unreasonable application' of clearly established federal law occurs 'if a state court "identifies the correct governing legal principles from the Supreme Court's decision but unreasonably applies that principle to the facts of a prisoner's case."'" *Id.* (brackets and citation omitted). Even erroneous state court decisions, if deemed reasonable, will survive habeas review. *Williams*, 529 U.S. at 411. Instead, "a federal court may reverse a state court ruling only where it was 'so lacking in justification that there [is no] possibility for fairminded disagreement.'" *Johnson*, 851 F. Supp. 2d at 721 (quoting *Vega v. Walsh*, 669 F.3d 123, 126 (2d Cir. 2012)).

Notably, habeas corpus petitions by *pro se* litigants "are held to less stringent standards than formal pleadings drafted by lawyers." *Licausi*, 460 F. Supp. 3d at 260. "It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks, emphasis, and citation omitted). Despite the elevated degree of solicitude afforded to *pro se* litigants, "even a litigant representing himself is obliged to set out identifiable arguments in his principle brief." *Ho-Shing v. Budd*, 771 F. App'x 79, 90 (2d Cir. 2019) (citation omitted) (summary order).

## DISCUSSION

Petitioner raises eight separate grounds for consideration, namely that: (1) the trial court erred in its evidentiary rulings regarding the testimony of the 8-year-old witness; (2) Petitioner was denied a fair trial before an impartial jury based on comments made at jury selection and testimony at trial regarding his incarceration; (3) Petitioner was denied a fair trial before an impartial jury because a juror was "dozing" during the jury charge; (4) the evidence presented at trial was not legally sufficient; (5) the jury verdict was against the weight of the evidence; (6) Petitioner's sentence was unconstitutional; (7) Petitioner received ineffective assistance of trial counsel; and (8) the trial court erred in permitting the introduction at trial of certain statements made by Petitioner to the police.  (*See, e.g.*, DE 1.)  As discussed more fully below, after applying the liberal standard of review afforded to *pro se* litigants, the Court finds that none of Petitioner's asserted grounds warrants habeas relief, and therefore recommends to Judge Kovner that that Petition be dismissed.

***Ground 1: Evidentiary Rulings Regarding Witness Testimony***

Construed liberally, Petitioner first claims that the trial court erred by: (1) concluding that the 8-year-old witness, M.M., met the statutory requirements for giving sworn testimony; (2) refusing to allow defense counsel to cross-examine M.M. during the court's consideration of her ability to testify; and (3) not revisiting its initial determination after the witness purportedly offered confusing testimony.  (DE 1 at 4.)  Because the state court's decision regarding these claims rests on independent and adequate grounds, the claims are procedurally barred from habeas review.

The Appellate Division held that "[Petitioner's] contention that the County Court erred in the manner in which it conducted the competency hearing for a then eight-year-old witness [wa]s unpreserved for appellate review."  *Zelaya*, 170 A.D.3d at 1207.  In its determination, the Appellate Division relied on CPL Section 470.05(2), which establishes the procedural rule that trial errors are preserved for appeal only when "a protest thereto [is] registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same."  CPL §

470.05(2).[3]  In light of this holding, "it is clear that the Appellate Division's decision was firmly based on a state procedural ground for default[,] failure to preserve," and, "[a]s such, the Court is foreclosed from reviewing the state court decision." *Cardova v. Lavalley*, 123 F. Supp. 3d 387, 398 (E.D.N.Y. 2015) (citing *Murden v. Artuz*, 497 F.3d 178, 191 (2d Cir. 2007)); *see also Garvey v. Duncan*, 485 F.3d 709, 718 (2d Cir. 2007) (noting that "[Section] 470.05(2) is a firmly established and regularly followed New York procedural rule").  That the Appellate Division also went on to deny Petitioner's claim on the merits is of no moment, as its reliance on the state procedural law constitutes an independent and adequate ground for its decision. *See Cruz v. Colvin*, No. 17-CV-3757 (JFB), 2019 WL 3817136, at *8 (E.D.N.Y. 2019) ("Although the [Appellate Division] alternatively addressed the merits of the legal sufficiency claim, it nevertheless relied on the procedural bar as an independent basis for its disposition of the claim.  [The Appellate Division] clearly expressed that its judgment rests on the state procedural bar, by stating that the claim was unpreserved and by citing C.P.L. § 470.05(2).") (citation omitted).  Moreover, Petitioner has not come forward with any evidence showing cause, prejudice, or that the alleged constitutional violation resulted in a miscarriage of justice.  Thus, Petitioner's arguments are procedurally barred and unreviewable by this Court.

As such, the undersigned respectfully recommends that Petitioner's claim for habeas relief based on the trial court's rulings regarding witness testimony be denied.

**Ground 2: Denial of Fair Trial Before an Impartial Jury – Statements Regarding Incarceration**

Petitioner next claims he was denied a fair trial before an impartial jury because a prospective juror informed the jury panel that Petitioner was incarcerated pending trial and the jury heard testimony from two witnesses regarding this pre-trial incarceration.  (DE 1 at 5; *see* DE 1-1 at 40–42.)  The Appellate Division held that this claim, too, was unpreserved for appellate review because, pursuant to CPL Section 470.05(2), defense counsel failed to contemporaneously object at the proceedings.  *Zelaya*, 170 A.D.3d at

---

[3] Said differently, "[t]he failure to preserve a claim"—by failing to lodge a contemporaneous objection—"for review on appeal renders the claim procedurally barred under relevant New York procedural law." *Williams v. Greene*, No. 04-CV-4507 (RPM), 2009 WL 2579259, at *5 (E.D.N.Y. Aug. 20, 2009) (citing CPL § 470.05(2)).

1207. Indeed, a review of the record demonstrates that defense counsel failed to specifically object to the remarks and trial testimony Petitioner raised on appeal. (*See* DE 8-2 at 285–90, 550–51, 645.) As discussed above, because "[Section] 470.05(2) is a firmly established and regularly followed New York procedural rule," habeas relief is not available for this claim. *Garvey*, 485 F.3d at 718. It is of no consequence that the Appellate Division addressed the merits of this claim as well. *Cruz*, 2019 WL 3817136 at *8. Petitioner has not demonstrated that this procedural default was prejudicial, shown cause, or shown that the alleged constitutional violation resulted in a miscarriage of justice. Thus, Petitioner's claim that he was denied a fair trial based on statements made to the jury about his incarceration must fail.

Accordingly, the undersigned respectfully recommends that Petitioner's habeas claim regarding the statements made to the jury about his incarceration pending trial be denied.

### Ground 3: Denial of Fair Trial Before an Impartial Jury – "Dozing" Juror

Courts continually grapple with just what to do with sleeping jurors. *See* Nicole Hong, *Ladies and Gentlemen of the Jury, Please Wake Up!* WALL ST. J. (Dec. 8, 2017, 11:31 AM), https://www.wsj.com/articles/ladies-and-gentlemen-of-the-jury-please-wake-up-1512750669. Petitioner here contends that he was denied a fair trial because "nothing was done about a juror 'dozing' during the court's charge." (DE 1 at 6 (capitalization altered).) This claim, which is entirely related to a state law issue, is not cognizable under federal habeas corpus review. In any event, Petitioner's claim fails on the merits.

Petitioner relies on C.P.L Section 270.35—which requires trial courts to discharge jurors found to be "grossly unqualified" following the commencement of trial—in arguing that the trial court was required to discharge a juror for sleeping during the jury charge. (DE 1-1 at 43–44). However, as Respondent points out, this is a state law issue, rendering it unsuitable for federal habeas review. *Faria v. Perez* is on point and instructive. There, the habeas petitioner, relying on C.P.L Section 270.35, "argue[d] that the trial court's failure to dismiss a juror that had been suspected of sleeping at some points during the presentation evidence deprived her of her [c]onstitutional right to a jury trial." *Faria v. Perez*, No. 04–CV–2411 (RRM), 2012 WL 3800826, at *12 (E.D.N.Y. Sept. 2, 2012). Recognizing that petitioner's reliance on C.P.L

Section 270.35 was based purely on state law, the court held that the "claim d[id] not present a federal question cognizable under habeas corpus review." *Id.* (citing *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.")). Petitioner's claim here—which is nearly identical to the claim asserted in *Faria*—is likewise unreviewable by this Court.

Reviewability aside, Petitioner's claim still must fail on the merits.[4] "This is so because habeas relief is available for juror misconduct only where a petitioner can demonstrate that []he has suffered prejudice as a result." *Id.* (citing *Knapp v. Leonardo*, 46 F.3d 170, 176 (2d Cir. 1995)). The record makes clear that such prejudice does not exist here. The trial judge held a sidebar where she alerted the parties that she observed a juror "dozing off" as she delivered the jury charge. (DE 8-2 at 546:13–20.) The dozing was not continuous, and neither counsel observed it. (*Id.* at 546:16–24.) The trial judge later reiterated her observation to counsel, stating:

> Counsel[], I would like to further amplify the record that I made with respect to Juror Seven, as I indicated, I did from time to time observe this juror with her eyes closed. It was not of lengthy duration, but I thought it was wise to at least bring this to both sides['] attention. No one else seemed to have observed this. I believe the matter would then be closed.

(*Id.* at 556:24–25; 557:1–8.) It is well held that the trial judge "is in the best position to sense whether the jury is able to proceed properly with its deliberations." *United States v. Parker*, 903 F.2d 91, 101 (2d Cir. 1990). The trial judge here properly exercised her discretion in concluding that the juror intermittently shutting her eyes during the jury charge did not render her grossly unqualified. *See Faria*, 2012 WL 3800826 at *12 (noting that "a trial judge 'has wide discretion to decide upon the appropriate course to take, in view of h[er] personal observations of the jurors and parties'") (quoting *United States v. Aiello*, 771 F.2d 621, 629 (2d Cir. 1985)). Moreover, there is no indication that this juror conduct "adversely affected the jury's deliberations or had a substantial and injurious effect on its ultimate conclusions." *Id.* Therefore,

---

[4] Although the Court agrees that Petitioner does not present a cognizable federal claim, and that Petitioner's claim is nevertheless unexhausted and procedurally barred, Respondent urges the Court to exercise its discretion and address this claim on the merits. (DE 7 at 27.)

Petitioner has failed to show that actual juror misconduct occurred at trial and has not shown that he was prejudiced by this purported misconduct.[5]

Accordingly, the undersigned respectfully recommends that Petitioner's claim for habeas relief for being denied a fair trial due to a "dozing" juror be denied.

**Ground 4: Legal Sufficiency of the Evidence**

Petitioner next claims that the evidence at trial did not establish his guilt beyond a reasonable doubt because the People failed to establish the time frames of the charged crimes and the age of the victims. (DE 1 at 8; *see* DE 1-1 at 46–48.) This claim, too, is procedurally barred and therefore unreviewable by a federal habeas court.

Similar to the above, the Appellate Division found that—citing to C.P.L. Section 470.05(2)—Petitioner's "challenge to the legal sufficiency of the evidence [was] unpreserved for appellate review." *Zelaya*, 170 A.D.3d at 1208.[6] To reiterate, New York's contemporaneous objection rule is an independent and adequate state ground that, when relied on by the state court, bars federal habeas review. *Garvey*, 485 F.3d at 718. The Appellate Division's decision to address the merits in the alternative has no bearing on the outcome here. *Cruz*, 2019 WL 3817136 at *8. Moreover, Petitioner has not established cause for the default, nor has he shown prejudice or a miscarriage of justice. Thus, Petitioner's claim regarding the sufficiency of the evidence is procedurally barred from review by this Court.

The undersigned therefore respectfully recommends that Petitioner's legal sufficiency claim for habeas relief be denied.

**Ground 5: Weight of the Evidence**

In addition to his claim regarding the legal sufficiency of the evidence, Petitioner claims that "the verdict rendered by the jury was against the weight of the evidence." (DE 1 at 9 (capitalization altered).)

---

[5] Petitioner also ropes into this argument a claim for ineffective assistance of counsel, which the Court discusses *infra*.

[6] The Appellate Division also cited to *People v. Hawkins*, which held that in order "[t]o preserve . . . a challenge to the legal sufficiency of a conviction, a defendant must move for a trial order of dismissal, and the argument must be 'specifically directed' at the error being urged." 11 N.Y.3d 484, 492 (N.Y. 2008) (citation omitted).

However, "[t]he question of whether a verdict is against the weight of the evidence presents only a question of state law." *Lancaster v. Capra*, 20-CV-1678 (WFK) (LB), 2021 WL 1946329, at *5 (E.D.N.Y. May 13, 2021) (citing C.P.L. § 470.15(5); *People v. Bleakley*, 69 N.Y.2d 490, 494–95 (N.Y. 1987)). Petitioner's weight of the evidence claim is therefore not cognizable on federal habeas review. *Esguerra v. Cronin*, 21-cv-449 (BMC), 2021 WL 681076, at *4 (E.D.N.Y Feb. 22, 2021) ("A challenge to the weight of the evidence . . . is not cognizable on federal habeas review.") (citing cases). Accordingly, the undersigned respectfully recommends that Petitioner's weight of the evidence claim for habeas relief be denied.

***Ground 6: Constitutionality of Imposed Sentence***

Petitioner next claims the imposed sentence violates the Eighth Amendment's protection against cruel and unusual punishment and the Fourteenth Amendment's Due Process clause. (DE 1 at 10.) Construed liberally, Petitioner also challenges the legality of the state court's order of protection— specifically its scope and duration—entered on behalf of three children who witnessed the crime. (DE 1-1 at 61–63.) Petitioner's claims regarding the excessiveness of the sentence are unexhausted and therefore unreviewable, and Petitioner's claim as to the order of protection is not cognizable on federal habeas review.

Petitioner's claim that his sentence violates the Eighth and Fourteenth Amendments is unexhausted because it was not fairly presented to the state court. On appeal, Petitioner cited exclusively to state law cases—decisions which failed to engage in any constitutional analysis[7]—and argued for a sentence reduction. (*Id.* at 59–63.) "However, requesting that a state court invoke its discretionary authority to reduce a sentence . . . , without more, is not enough to alert the court that the claim is of a federal constitutional dimension." *Hernandez v. Conway*, 485 F. Supp. 2d 266, 277 (W.D.N.Y. 2007) (citing *King v. Cunningham*, 442 F. Supp. 2d 171, 181 (S.D.N.Y. 2006)); *see also Brooks v. McGinnis*, 104 F. App'x 761, 763 (2d Cir. 2004) (holding that petitioner did not fairly present his due process claim in state court when his "state court briefs contained no reference to the Constitution or due process," did not cite to federal cases, and cited to state law cases that did not "employ constitutional analysis") (summary order). Because

---

[7] *See, e.g.*, *People v. Silver*, 199 N.Y.S.2d 254 (N.Y. App. Div. 1960); *People v. Notey*, 423 N.Y.S.2d 947 (N.Y. App. Div. 1980); *People v. Suitte*, 455 N.Y.S.2d 675 (N.Y. App. Div. 1982).

he did not alert the Appellate Division to the constitutional contentions he raises here, Petitioner's excessive sentence claim is unexhausted and barred from habeas review.

Moreover, Petitioner's contention that the scope and duration of the order of protection is unlawful under state law is not cognizable for habeas relief.  "An order of protection is not a part of the sentence imposed, but rather is issued incident to a criminal proceeding to safeguard the rights of victims and witnesses both prior to and after conviction."  *Patel v. Martuscello*, 10 CV 5695 (CBA) (LB), 2015 WL 11401853, at *11 (E.D.N.Y. May 12, 2015) (quoting *People v. Nieves*, 811 N.E.2d 13, 18 (N.Y. 2004)) (internal quotation marks omitted).  Even if an order of protection is defective as a matter of state law, those defects do not render one's sentence invalid.  *Hodges v. Bezio*, 9:11-CV-0439 (LEK/DEP), 2014 WL 2779267, at *8 (N.D.N.Y. June 19, 2014) (citing *Nieves*, 811 N.E.2d at 18).  Thus, an order of protection's invalidity under New York state law has no bearing on one's constitutional rights.  *Id.* (citing *McKeon v. Heath*, No. 12-CV-0485, 2013 WL 5818591, at *15 (W.D.N.Y. Oct. 29, 2013)); *see also Patel*, 2015 WL 11401853, at *11 (holding that petitioner's challenge to the duration of an order of protection was not a basis for habeas corpus relief).  Thus, Petitioner's claim here regarding the order of protection is not reviewable by this Court.

In sum, the undersigned respectfully recommends that Petitioner's habeas claims regarding the length of his sentence and the imposed order of protection be denied.

***Ground 7: Ineffective Assistance of Counsel***

Petitioner additionally claims that he was provided ineffective assistance of counsel at trial.  (DE 1 at 11.)  Specifically, Petitioner contends that his trial counsel failed to: (1) argue that the evidence was legally insufficient as to the dates of the crimes charged; (2) properly preserve challenges during jury selection or dispel potential biases voiced by prospective jurors; (3) adequately cross-examine the complainant; (4) pursue a *Brady* issue regarding the complainant's U-Visa status; (5) call potential witnesses; and (6) observe the dozing juror during the jury charge.  (DE 1-1 at 58–59.)  The Appellate Division found that Petitioner was not deprived of the effective assistance of counsel in any regard.  *Zelaya*,

170 A.D.3d at 1208. Respondent asserts that each of Petitioners claims in this action are likewise meritless. (DE 7 at 43.)

In analyzing ineffective assistance of counsel claims, courts are guided by the Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668 (1994). "In *Strickland*, the Supreme Court promulgated a two-prong test to evaluate ineffective assistance of counsel claims: 'a defendant must demonstrate both "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense."'" *Garner v. Lee*, 908 F.3d 845, 860–61 (2d Cir. 2018) (citing *Waiters v. Lee*, 857 F.3d 466, 477 (2d Cir. 2017) (quoting *Strickland*, 466 U.S. at 687)). Courts need not address both prongs of the inquiry if the petitioner cannot carry his burden on either prong. *Licausi*, 460 F. Supp. 3d at 259 (citing *Garner*, 908 F.3d at 860–61).

To establish deficient performance under the first prong, the petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. "However, constitutionally effective counsel embraces a wide range of professionally competent assistance, and counsel is strongly presumed to have rendered adequate assistance and made all decisions in the exercise of reasonable professional judgment." *Terrell v. Kickbush*, No. 17-CV-7027 (JFB), 2019 WL 3859512, at *8 (E.D.N.Y Aug. 16, 2019) (citing *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005)) (cleaned up). Indeed, "in reviewing claims of ineffective assistance, [courts] must be mindful of the broad range of strategic decisions that fall within the purview of trial counsel, and that such decisions often cannot be fairly viewed from the lofty perch of hindsight." *Licausi*, 460 F. Supp. 3d at 259 (citations omitted).

To establish prejudice, courts must ask whether "there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Garner*, 908 F.3d at 861–62 (internal quotation marks and citation omitted). "The question is not whether a court can be certain counsel's performance had had no effect on the outcome or whether it is *possible* a reasonable doubt might have been established if counsel acted differently; instead, the likelihood of a different result must be substantial, not just conceivable." *Id.* at 862 (citing *Richter*, 562 U.S. at 111–12) (emphasis in original)

(cleaned up). The prejudice analysis is "ineluctably tied to the strength of the prosecution's evidence," therefore "[e]ven serious errors by counsel do not warrant granting habeas relief where the conviction is supported by overwhelming evidence of guilt." *Id.* (citations omitted).

On federal habeas review, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 at 101. This requires a different inquiry than simply determining whether defense counsel's performance met the *Strickland* standard; "[w]ere that the inquiry, the analysis would be no different than if, for example, [the district court] were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court." *Id.* It follows that "when ineffective assistance claims are considered under the AEDPA, the reviewing court affords a 'doubly' deferential standard regarding the state court opinion." *Harden v. Fields*, No. 9:18-CV-162 (MAD/CFH), 2021 WL 2445680, at *13 (E.D.N.Y. Apr. 16, 2021) (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)).

<u>Failure to Challenge Sufficiency of the Evidence</u>

Petitioner first asserts that his trial counsel was ineffective by failing to challenge the sufficiency of the evidence regarding the proof of the dates of the charged crimes.[8] (DE 1-1 at 58.) The Appellate Division held that, viewing the evidence in a light most favorable to the prosecution, the evidence was "legally sufficient to establish the [Petitioner's] guilt beyond a reasonable doubt." *Zelaya*, 170 A.D.3d at 1208. The indictment charged Petitioner with committing the criminal acts between April 2011 and April 2012. (*See* DE 8-1 at 80–85.) Trial testimony established that Petitioner raped the victim during that time-period. (*See, e.g.*, DE 8-2 at 542–44; 569; 664–69; 679–80.) Moreover, Petitioner's oral and written admissions corroborated that the charged criminal conduct took place within the timeframe charged in the indictment. (*Id.* at 725–32; 761–62.) As such, it was reasonable for defense counsel to not challenge the sufficiency of the evidence at trial because such an argument would have been futile. *United States v. Abad*, 514 F.3d 271, 275–76 (2d Cir. 2008). Therefore, the state court's determination—that Petitioner's claim

---

[8] The Court notes that each of Petitioner's ineffective assistance of counsel claims—other than for the claim regarding the "dozing" juror—are limited to perfunctory, single-sentence assertions with little-to-no follow-up exposition.

of ineffective assistance of counsel based on a failure to challenge the sufficiency of the evidence was meritless—was reasonable, and federal habeas intervention is thus inappropriate.

Failure to Explore Potential Juror Bias

Petitioner next claims that his trial counsel was ineffective because he "failed to properly preserve challenges during jury selection or correct a potential juror who indicated that a confession was indicia of guilt" and "failed to pursue the issue that the jury pool was tainted [by] a construction worker who indicated his bias against Hispanic workers taking his construction jobs." (DE 1-1 at 58.)

During *voir dire*, potential jurors did indeed express concern that Petitioner had confessed to the crimes charged. (*See, e.g.*, DE 8-2 at 230–32.) However, "[t]rial counsel is accorded particular deference when conducting *voir dire* and [a]n attorney's actions during *voir dire* are considered to be matters of strategy." *Figueroa v. Ercole*, No. 09 Civ. 7225 (PGG) (JCF), 2013 WL 3655903, at *24 (E.D.N.Y. July 15, 2013) (internal quotation marks and citations omitted). Such "strategic decision[s] cannot be the basis for a claim of ineffective assistance unless counsel's decision is shown to be so ill-chosen that it permeates the entire trial with obvious unfairness." *Id.* (internal quotation marks and citations omitted). Petitioner has failed to make such a showing here. To the contrary, the trial court repeatedly reminded potential jurors throughout the jury selection process of the presumption of innocence and Petitioner's right to a fair and impartial jury. (*See, e.g.*, DE 8-1 at 32–34; 77–79; 202–04; 230–32.) Moreover, defense counsel inquired during *voir dire* about whether Petitioner's confession would affect the potential jurors' ability to be impartial. (*Id.* at 143–44; 249–50.) Thus, Petitioner has not shown that the state court's decision that his trial counsel was effective in exploring potential jurors' biases regarding Petitioner's confession was unreasonable.

Petitioner also fails to show ineffective assistance of counsel with respect to defense counsel's action as to one juror's bias against illegal immigrants. Petitioner's contention that this juror's bias tainted the jury pool is belied by the trial record. The juror expressed his bias against illegal immigrants to the trial court outside of the presence of other jury members. (*Id.* at 2–6.) The juror stated that he did not share his views with other jurors, which the trial court found to be credible. (*Id.* at 5–6.) Both defense counsel and

the government agreed that the juror was grossly unqualified to serve, and jointly applied to have him replaced with an alternate juror, which the trial court granted.  (*Id.* 5–6; 13.)  And the trial court made clear that other jury members were "not to speculate" as to why the juror was excused and replaced.  (*Id.* at 13.)  In light of the foregoing, it is clear that defense counsel did not act unreasonably in declining to pursue this issue further, and therefore was not ineffective in his representation of Petitioner in that regard.  Thus, the state court's finding that Petitioner's counsel was effective for failing to press this issue was not unreasonable.

In sum, the state court reasonably applied the *Strickland* test in denying Petitioner's claims of ineffective assistance of counsel regarding juror bias, and this Court must therefore defer to its findings.

Cross-Examination of Complainant

Petitioner further claims that his trial counsel was ineffective because he "egregiously questioned the complainant about acts from [Petitioner's] other case."  (DE 1-1 at 58–59.)  "Decisions whether to engage in cross-examination, and if so what extent and in what manner, are . . . strategic in nature." *Ramirez v. United States*, 898 F. Supp. 2d 659, 666 (S.D.N.Y. 2012) (quoting *United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987)) (cleaned up).  To raise constitutional concerns, a court must find that there was "no strategic or tactical justification for the course taken" on cross-examination.  *Eze v. Senkowski*, 321 F.3d 110, 127 (2d Cir. 2003) (quoting *United States v. Luciano*, 158 F.3d 655, 660 (2d Cir. 1998)).  Although Petitioner does not cite to the specific line of questioning that he contends resulted in ineffective assistance of counsel, a review of the record demonstrates that trial counsel's likely intent in "questioning the complainant about acts from [Petitioner's] other case" was to cast a shadow over the complainant's credibility.  (DE 1-1 at 212–15.)  This cross-examination was a reasonable exercise of trial strategy, and therefore does not support a claim of ineffective assistance.  *See United States v. Smith*, 198 F.3d 377, 386 (2d Cir. 1999).  Thus, Petitioner's claim that his trial counsel's cross-examination of the complainant resulted in ineffective assistance of counsel must fail.

<u>Failure to Pursue *Brady* Issue Regarding Complainant's U-Visa Status</u>

Petitioner next claims that his trial counsel was ineffective for failing to pursue *Brady* issues related to the complainant's U-Visa status. This claim, too, is unsubstantiated by the record. Defense counsel cross-examined the complainant and her mother about their understanding of U-Visa eligibility. (DE 8-2 at 567–68; 687–88.) Defense counsel also cross-examined two other witnesses about the issue (*id.* at 651–53; 702) and incorporated in his summation the theory that the witnesses were fabricating their testimony as a means of attaining citizenship, (*id.* at 926). Petitioner does not point to any other evidence supporting his claim that his counsel failed to obtain, and take advantage of, *Brady* material related to complainant's U-Visa status. His claim for ineffective assistance of counsel regarding these purported *Brady* issues therefore cannot succeed because he has not demonstrated that his counsel's conduct was deficient. *See Haberer v. Napoli*, No. 07-CV-799 (MAT), 2010 WL 2998665, at * (W.D.N.Y. July 26, 2010) (holding that petitioner could not "come close to establishing that he received ineffective assistance of counsel [for failure to obtain *Brady* material] because he [did] not set forth a factual basis for th[e] claim").

<u>Failure to Explore Additional Witnesses</u>

Petitioner also asserts that his trial counsel was ineffective because he "told the court that the defense rested while noting that he had other witnesses he had not taken the time to locate." (DE 1-1 at 65.) Defense counsel did initially note that he was considering "as matter of trial strategy" whether and when to call an additional witness whom he was having difficulty locating. (DE 8-2 at 373–77.) Ultimately, defense counsel "determined that [the additional witness] did not have anything significant to add to the case," and that he was unable to locate another potential witness. (*Id.* at 441–42.) As discussed above, "[t]he decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial," and therefore "fall[s] squarely within the ambit of trial strategy and, if reasonably made, cannot support an ineffective assistance claim." *Smith*, 198 F.3d at 386 (citation omitted). Given that defense counsel's decisions here were clearly a matter of strategy and reasonable in light of the circumstances of the case, the Appellate Division's

22

application of *Strickland* was not unreasonable.  As such, Petitioner's claim of ineffective assistance of counsel based on defense counsel's failure to call additional witnesses must fail.

Failure to Notice the "Dozing" Juror

Finally, Petitioner contends that he received ineffective assistance of counsel when his attorney failed to notice a dozing juror during the trial court's jury charge.  (DE 1-1 at 65.)  As previously noted, both defense counsel and the prosecution failed to notice that the juror had intermittently closed her eyes during the jury charge, which, according to the trial court, "was not of lengthy duration."  (DE 8-2 at 546:16–24; 556:24–25; 557:1–8.)  The record does not demonstrate that the juror "was, in fact, asleep, as opposed to daydreaming or concentrating with eyes shut," which would have, to some degree, strengthened Petitioner's argument.  *Ciaprazi v. Senkowski*, 151 F. App'x 62, 64 (2d Cir. 2005) (summary order).  In any event, "trial counsel's decision not to object may well have been based on his desire to retain the inattentive juror rather than to seek to replace h[er] with an alternate."  *Id.* at 63.  As such, it cannot be said that the Appellate Division was unreasonable in finding that defense counsel was effective in this regard, and Petitioner's habeas claim as to ineffective assistance regarding the dozing juror therefore must fail.

\* \* \*

In sum, the undersigned respectfully recommends that each of Petitioner's habeas claims asserting ineffective assistance of counsel be denied.

***Ground 8: Voluntariness of Confession***

Petitioner lastly claims that his oral and written confessions should have been suppressed because they were not knowing or voluntary.  (DE 1 at 12.)  Respondent contends that the state court's denial of suppression was not unreasonable, and that habeas relief should therefore be denied.  (DE___ at 51.)

"A suspect is entitled to *Miranda* warnings only if he or she is interrogated while 'in custody.'" *Parsad v. Greiner*, 337 F.3d 175, 181 (2d Cir. 2003) (citing *Thompson v. Keohane*, 516 U.S. 99, 102 (1995)); *see Miranda v. Arizona*, 384 U.S. 436, 444 (1955).  It follows that free and voluntary statements— given, of course, without compelling influences—are admissible as evidence, even in the absence of a *Miranda* warning.  *Miranda*, 384 U.S. at 478.  On the other hand, "failure to given the prescribed warnings

and obtain a waiver of rights before custodial questioning generally requires exclusion of any statements obtained." *Mo. v. Seibert*, 542 U.S. 600, 608 (2004).

"The test used in determining whether a defendant was in custody is an objective one that (a) asks whether a reasonable person would have understood h[im]self to be 'subjected to those associated with a formal arrest,' and (b) 'focuses upon the presence or absence of affirmative indications that the defendant was not free to leave.'" *United States v. Kirsh*, 54 F.3d 1062, 1067 (2d Cir. 1995) (quoting *United States v. Mitchell*, 966 F.2d 92, 98 (2d Cir. 1992)). The first prong requires courts to make factual determinations regarding the circumstances of the interrogation. *Thompson*, 516 U.S. at 112, 116. Because such determinations are purely factual, a state court's factual findings are presumed correct on habeas review; that presumption can only be rebutted if the petitioner presents clear and convincing evidence to the contrary. *Parsad*, 337 F.3d at 181 (citing 28 U.S.C. § 2254(e)(1)). The second prong requires courts to ask whether, given the circumstances of interrogation, "a reasonable person would have felt 'at liberty to terminate the interrogation and leave,' which is a mixed question of fact and law." *Id.* at 181–82 (quoting *Thompson*, 516 U.S. at 112–13).

<u>Petitioner's Statements at His Home</u>

The state court's determination that Petitioner's "initial pre-*Miranda* statement to the officer was not the product of a custodial interrogation" was not unreasonable. *Zelaya*, 170 A.D.3d at 1206–07. Officer Alerte's hearing testimony established that—at the time of the initial questioning—Petitioner was in his home, was not handcuffed or retrained, and was not subject to continuous questioning. (DE 8-3 at 37–39; *compare with Spence v. Faucher*, No. 3:17-CV-01595 (CSH), 2018 WL 2926291, at *7 (D. Conn. June 7, 2018)). To the contrary, Officer Alerte's testimony demonstrates that he and Petitioner's conversation was casual, with Petitioner stating on his own accord that "he was in love with [the victim] and they only made love once." (*Id.* at 39.) In light of this testimony, paired with the presumption of correctness afforded to the state court on federal habeas review, the state court's determination that Petitioner's initial statements in his home to Officer Alerte were not the product of custodial interrogation—and that, therefore, a *Miranda* warning was not required—was not unreasonable. *See Spence*, 2018 WL 2926291, at *7–8. Petitioner has

not come forward with clear and convincing evidence to the contrary.  Thus, habeas relief is not warranted as to the state court's refusal to suppress these statements.

Petitioner's Written Confession

Similarly, the state court's was reasonable in holding that Petitioner "was advised of his *Miranda* rights and that he knowingly, voluntarily, and intelligently waived them at the precinct prior to giving his subsequent statements." *Zelaya*, 170 A.D.3d at 1207.  As an initial matter, Petitioner's contention that his written statements were involuntary because they "flowed directly from the earlier improperly elicited statement" is baseless because, as discussed above, the state court reasonably concluded that the initial statement was not a product of a custodial interrogation.  Thus, that statement does not operate to taint Petitioner's subsequent written confession.

Moreover, it cannot be said, as Petitioner urges, that the Petitioner's written confession was not "knowing" because the translator at the precinct, Officer Alerte, was not an official Spanish interpreter.  The Appellate Division found that "[t]he evidence at the suppression hearing further demonstrated that an officer translated the *Miranda* rights into Spanish for the Spanish-speaking [Petitioner] and that the [Petitioner's] written statement was read back to him in Spanish before he signed and adopted the statement as his own." *Zelaya*, 170 A.D.3d at 1207.  A review of the suppression hearing record—specifically the testimony of Detective Michels and Officer Alerte—demonstrates that Petitioner understood the Spanish translation provided by Officer Alerte.  (*See, e.g.*, DE 8-3 at 11–13; 17; 26; 43–45.)  Accordingly, the state court's finding that Petitioner's written confession was knowing was not unreasonable, and habeas relief must be denied as to the denial of suppression for the written confession.

In sum, the undersigned respectfully recommends that Petitioner's habeas claims regarding the voluntariness of his statements to the authorities be denied.

## **CONCLUSION**

For the foregoing reasons, having considered the challenges made by Petitioner, the undersigned respectfully recommends to District Judge Kovner that the Petitioner's application for a writ of habeas corpus be denied in its entirety.  As petitioner has not made a substantial showing of the denial of any

constitutional right, it is recommended that no certificate of appealability should be issued. 28 U.S.C. § 2253; *see United States v. Perez*, 129 F.3d 255, 259–60 (2d Cir. 1997) (discussing the standard for issuing a certificate for appealability*); see also Lucidore v. N.Y. State Div. of Parole*, 209 F.3d 107, 112–13 (2d Cir.2000), *cert. denied*, 531 U.S. 873 (2000). It is further recommended that for purposes of an appeal *in forma pauperis*, the Court should certify pursuant to 28 U.S.C. § 1915(a) that any appeal from a judgment denying this petition would not be taken in good faith. *Coppedge v. United States*, 369 U.S. 438 (1962).

## **OBJECTIONS**

A copy of this Report and Recommendation is being electronically served on counsel for each of the parties. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report. 28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this Report and Recommendation either by the District Court or the Court of Appeals. *Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("a party shall file objections with the district court or else waive right to appeal"); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir.2008) ("failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision"); *see Monroe v. Hyundai of Manhattan & Westchester*, 372 F. App'x 147, 147–48 (2d Cir. 2010) (same). In light of these time constraints, and the fact that Petitioner is incarcerated, the Clerk of the Court is directed to send this Report and Recommendation to Petitioner via overnight mail.

Dated:  Central Islip, New York
         August 9, 2021


         /s/ *James M. Wicks*
             JAMES M. WICKS
         United States Magistrate Judge

26